FILED
DEC 1 8 2013
U. S. DISTRICT COURT
E. DIST. OF MO.
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | **4:13CR522 JAR/SPM** |
| ) | |
| v. ) No. | |
| ) | |
| DEVON NORTHON GOLDING, M.D. and ) | |
| NATIONAL MEDICAL INFORMATION ) | |
| SERVICES, INC., ) | |
| ) | |
| Defendants. ) | |

### INDICTMENT

The Grand Jury charges that:

### INTRODUCTION

1. At all times relevant to this indictment, defendant Devon Northon Golding, M.D., was a medical doctor, licensed to practice in the state of Missouri.

2. Defendant National Medical Information Services, Inc. (NMIS) was incorporated in the State of Missouri in 1996 and is owned and operated by Dr. Golding. NMIS was initially located at 2331 Hampton Avenue, St. Louis, Missouri and later relocated to 3535 S. Jefferson, Suite 9, St. Louis, Missouri.

3. In January 2012, Dr. Golding changed the name of his practice to National Medical, Inc., which was another corporation that he owned and operated.

4. Dr. Golding has been an approved Medicare and Medicaid provider since at least 1995. Dr. Golding has also been a provider for several private insurance companies, including United Healthcare and Blue Cross Blue Shield.

## RELEVANT MEDICARE PROVISIONS

5. The Medicare Program is a federal health benefits program for the elderly and disabled. The United States Department of Health and Human Services (HHS), through the Centers for Medicare and Medicaid Services (CMS), administers the Medicare Program. CMS acts through fiscal agents, which are private entities that review claims and make payments to providers for services rendered to Medicare beneficiaries.

6. CMS acts through fiscal agents called Medicare Administrative Contractors ("MACs"), which are statutory agents for CMS for Medicare Part B. The MACs are private entities that review claims and make payments to providers for services rendered to Medicare beneficiaries. The MACs are responsible for processing Medicare claims arising within their assigned geographic area, including determining whether the claim is for a covered service. Wisconsin Physicians Service Insurance Corporation (WPS) is the Part B MAC for Eastern Missouri and thus processes NMIS's claims for Medicare reimbursement. There are numerous prescription benefit managers for the Medicare Part D program that process prescription claims for Medicare reimbursement.

7. To receive Medicare reimbursement, providers must make appropriate application to the MAC and execute a written provider agreement. The provider agreement obligates the provider to know, understand, and follow all Medicare regulations and rules. After successful completion of the application process, the MAC assigns the provider a unique provider number, which is a necessary identifier for billing purposes. The Medicare provider enrollment application states, under section #15 Certification Statement, items #7 and #8:

2

> I understand that the Medicare billing number issued to me can only be used by me or by a provider or supplier to whom I have reassigned my benefits under current Medicare regulations, when billing for services rendered by me.  I will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

8.      As part of the application process, Dr. Golding signed a HCFA-1561A form that required him:  "(A) to maintain compliance with the conditions set forth in Part 481 of Chapter IV, Title 42 of the Code of Federal Regulations, and to report promptly to the Health Care Financing Administration any failure to do so."  After the successful completion of the application process, Dr. Golding was assigned a unique provider number, which is a necessary identifier for billing services to Medicare.

9.      Medicare providers must retain clinical records for the period of time required by state law or five years from date of discharge if there is no requirement in state law.  Missouri statutes require that physicians maintain patient records for a minimum of seven years from the date when the last professional services were rendered.  Thus, Missouri law mandates that the defendants maintain all patient records for services provided from 2006 to the present.

## Relevant Missouri Medicaid Provisions

10.     MO HealthNet administers the Missouri Medicaid Program, which is jointly funded by the State of Missouri and the federal government.  Missouri Medicaid reimburses health care providers for covered services rendered to low-income Medicaid recipients.

11.     A Medicaid provider must enter into a written agreement to receive reimbursement for medical services to Medicaid recipients and must agree to abide by Medicaid regulations in

3

rendering and billing for those services. A Medicaid provider must submit claims by completing a CMS-1500 form, which contains the following certification:

> ... the services listed above were medically indicated and necessary to the health of this patient and were personally furnished by me or my employee under my personal direction. . . .and
>
> ... the foregoing information is true, accurate and complete. I understand that payment and satisfaction of this claim will be from Federal and State funds, and that any false claims, statements, or documents, or concealment of a material fact, may be prosecuted under applicable Federal or State laws.

12.     Medicaid providers must retain, for five years from the date of service, fiscal and medical records that reflect and fully document services billed to Medicaid, and must furnish or make the records available for inspection or audit by the Missouri Department of Social Services or its representative upon request. Failure to furnish, reveal, or retain adequate documentation for services billed to the Medicaid Program may result in recovery of the payments for those services not adequately documented and may result in sanctions to the provider's participation in the Medicaid Program. This policy continues to apply in the event of the provider's discontinuance as an actively participating Medicaid provider through the change of ownership or any other circumstance.

### Relevant Regulations Governing Nurse Practitioners and Registered Nurses

13.     A nurse practitioner is an "Advanced Practice Nurse," which is defined by the Missouri State Board of Nursing as a nurse who has had education beyond the basic nursing education and is certified by a nationally recognized professional organization as having a nursing specialty. Nurse practitioners in Missouri must work under a collaborative practice agreement with a physician, who must be within a 30 mile radius of the nurse practitioner and available to the

nurse practitioner at all times. Under such an arrangement, nurse practitioners may assess, diagnose, prescribe certain medications, and otherwise treat patients, even though the collaborating physician is not present on site.

14. Nurse practitioners may become providers with the Medicare and Medicaid programs if they have the necessary qualifications under state law and comply with other Medicare and Medicaid requirements. To obtain Medicare and Medicaid reimbursement, nurse practitioners must complete a provider enrollment application and obtain a unique identification number from Medicare and Medicaid. Medicare pays nurse practitioners 80-85% of the amount it pays a physician for the same service.

15. Registered nurses are much more limited in the services that they may provide under state law. Registered nurses are not permitted to diagnose or prescribe medications to patients. They may provide other services to patients only as directed by a physician when the physician is in the office suite and available to supervise them.

### CPT Procedure Codes

16. In presenting claims to Medicare, Medicaid, and other insurances, providers use numeric "codes" known as "CPT Codes," taken from the Physicians Current Procedural Terminology manual, to describe the service they provide. CPT codes are developed by the American Medical Association (AMA) and its body of physicians of every specialty, who determine appropriate definitions for the codes. By submitting claims using these CPT codes, providers represent to Medicare, Medicaid, and other insurers that the services described by the codes were, in fact, provided. Reimbursement rates for the CPT codes are set through a "fee

schedule" created by Medicare. The fee schedule outlines the maximum amount the government will reimburse the provider for a given service.

## COUNTS 1-3
## HEALTH CARE FRAUD SCHEME
## 18 U.S.C. 1347(a)(1) and 2

17. Paragraphs 1 through 16 are incorporated by reference as if fully set out herein.

18. A physician may not use CPT codes 99213, 99214, or 99215 to bill for physician evaluation and management services when the physician is out of the office.

19. CPT code 99213 is defined as an:

Office or other outpatient visit for the evaluation and management of an established patient, which requires at least 2 of the 3 key components:

- An expanded problem focused history;
- An expanded problem focused examination;
- Medical decision making of low complexity.

Counseling and/or coordination of care with other providers or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs. Usually, the presenting problems are of low to moderate severity. Physicians typically spend 15 minutes face-to-face with the patient and/or family.

20. CPT code 99214 is defined as an:

Office or other outpatient visit for the evaluation and management of an established patient, which requires at least 2 of the 3 key components:

- A detailed history;
- A detailed examination;

6

- Medical decision making of moderate complexity.

Counseling and/or coordination of care with other providers or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs. Usually, the presenting problems are of low to moderate severity. Physicians typically spend 25 minutes face-to-face with the patient and/or family.

21. CPT code 99215 is defined as an:

Office or other outpatient visit for the evaluation and management of an established patient, which requires at least 2 of the 3 key components:

- A comprehensive history;
- A comprehensive examination;
- Medical decision making of high complexity.

Counseling and/or coordination of care with other providers or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs. Usually, the presenting problems are of high severity. Physicians typically spend 40 minutes face-to-face with the patient and/or family.

22. It was part of a scheme and artifice to defraud that beginning in or about 2009 and continuing to in or about 2011, the defendants submitted, and caused to be submitted, claims that falsely represented that Dr. Golding had provided face-to-face services to the patients identified in the claims.

## Billing While Dr. Golding Was Out of Town

October 15-17, 2010, Baltimore Trip

23. Airline records indicate that Dr. Golding was in Baltimore, Maryland on October 15-17, 2010. His flight to Baltimore left St. Louis at 9:30 a.m. and arrived in Baltimore at 12:25 p.m. Dr. Golding did not return to St. Louis until October 17, 2010.

24. Nonetheless, the defendants submitted, and caused to be submitted, reimbursement claims, which falsely stated that Dr. Golding provided face-to-face services to three patients in his St. Louis office and one patient in the hospital on October 15, 2010. For the office visits, the defendants utilized CPT code 99215, thereby falsely indicating that Dr. Golding had spent about 40 minutes face-to face with each of the patients.

25. The defendants also submitted, and caused to be submitted, a claim, wherein they falsely stated that Dr. Golding had seen Patient B.D. in the hospital in St. Louis on October 16, 2010, when Dr. Golding was actually in Baltimore.

December 1-3, 2010, Kansas City Trip

26. Airline records indicate that Dr. Golding was in Kansas City, Missouri on December 1-3, 2010. His flight left St. Louis at 1:40 p.m. and arrived in Kansas City at 2:45 p.m. on December 1, 2010. Dr. Golding did not return to St. Louis until December 3, 2010.

27. Nonetheless, the defendants submitted, and caused to be submitted, claims, which falsely stated that Dr. Golding saw two patients in his St. Louis office on December 2, 2010. The defendants utilized CPT code 99214, thereby falsely indicating that Dr. Golding had spent about 25 minutes face-to-face with each of the patients.

8

### Billing Services of Registered Nurse as Evaluation and Management

28. At all times relevant to this Indictment, the defendants employed nurse practitioners and Dr. Golding had collaborative practice agreements with them.

29. At all times relevant to this indictment, Marletta Payne was a registered nurse, who worked for the defendants. At various times during her employment from approximately September 2009 to November 2011, Marletta Payne took the examination to become certified as a nurse practitioner. On each occasion, she failed the examination and informed Dr. Golding that she had failed the examination. Both Marletta Payne and Dr. Golding knew that under Missouri law she could not function as a nurse practitioner and could not provide evaluation and management services to patients.

30. At all times relevant to this Indictment, Marletta Payne worked five days a week Monday to Friday and saw patients on these days. Dr. Golding, on the other hand, typically did not work in the office every day and would come into the office only 2-3 days a week. In Dr. Golding's absence, Marletta Payne saw patients and ordered lab tests for them, which was beyond the scope of her license as a registered nurse.

31. It was part of the scheme and artifice to defraud that Marletta Payne completed progress notes for the patients that she saw. At times she did not sign the notes. Instead, Dr. Golding signed the progress notes upon his return to the office and thereby falsely indicated that he had seen the patients on the dates indicated.

32. It was part of the scheme and artifice to defraud that the defendants used CPT codes 99213, 99214, and 99215 to bill for evaluation and management services, when only Marletta Payne had seen the patients. Examples of some of these false claims are listed below:

9

| Patient | Date of Service | CPT Code Billed |
|---------|-----------------|-----------------|
| V.F. | 11/29/10 | 99214 |
| J.L. | 07/08/10 | 99215 |
| M.L. | 02/11/11 | 99214 |
| A.M. | 05/19/11 | 99214 |
| M.M. | 01/28/11 | 99213 |
| S.S. | 11/01/10 | 99215 |
| S.S. | 06/02/11 | 99215 |
| C.W. | 12/03/10 | 99214 |
| G.W. | 07/08/10 | 99215 |
| B.D. | 06/17/10 | 99215 |
| G.A. | 07/16/10 | 99215 |
| J.B. | 08/12/10 | 99215 |
| H.C. | 02/09/11 | 99214 |
| K.B. | 02/01/10 | 99215 |
| M.D. | 02/07/11 | 99214 |

### Using Pre-signed Prescription Forms

33.     As stated above, registered nurses are not authorized to prescribe medications. Further, only a physician may prescribe controlled substances. Under Missouri law (R.S. Mo. 334.100(2)(4)), a physician may not sign a blank prescription form and may not prescribe any controlled substance drug without an examination of the patient.

10

34. It was part of the scheme and artifice to defraud that Dr. Golding pre-signed blank prescription forms and gave them to Marletta Payne to use to write prescriptions, including prescriptions for controlled substances.

35. It was part of the scheme and artifice to defraud that Dr. Golding told Marletta Payne to conceal the pre-signed prescription forms and not to tell others in the office about the pre-signed prescription forms.

36. Neither Medicare nor Medicaid will pay for prescriptions written by a registered nurse. By pre-signing the prescription pad, Dr. Golding concealed a material fact from the pharmacies that filled the prescriptions and from Medicare and Medicaid, who paid for the prescriptions. Examples of some of the prescriptions written by Marletta Payne are listed below:

| Patient | Date of Prescription | Insurer |
| --- | --- | --- |
| J.B. | 11/10/11 | Medicaid |
| C.L. | 06/10/10 | Medicaid |
| R.S. | 06/30/11 | Medicaid |
| T.C. | 06/16/11 | Medicaid |

**Execution of the Health Care Fraud Scheme**

37. On or about the dates indicated below, in the Eastern District of Missouri,

**DEVON NORTHON GOLDING, M.D.**
**and**
**NATIONAL MEDICAL INFORMATION SERVICES, INC.,**

the defendants herein, knowingly and willfully executed and attempted to execute, the above described scheme or artifice to defraud health care benefit programs, in connection with the delivery and payment for health care benefits, items, and services, that is, the defendants submitted

11

reimbursement claims to Medicare and Medicaid, health care benefit programs, which claims falsely represented that Dr. Golding had personally provided face-to-face services to the patients.

| Count | Patient | Date of Service | Date of Medicaid Claim | Insurer |
|---|---|---|---|---|
| 1 | R.S. | 12/02/2010 | 01/04/11 | Medicaid |
| 2 | D.E. | 12/02/2010 | 01/18/11 | Medicaid/Medicaid |
| 3 | B.D. | 10/16/2010 | 11/20/10 | Medicare/Medicaid |

All in violation of Title 18, United States Code, Sections 1347(a)(1) and 2.

## COUNTS 4-5
## FALSE STATEMENTS INVOLVING HEALTH CARE BENEFIT PLAN
## 18 U.S.C. 1035(a)(2) and 2

38. Paragraphs 1-16 and 28-36 are incorporated by reference as if fully set out herein.

39. On or about the dates indicated below, in the Eastern District of Missouri,

**DEVON NORTHON GOLDING, M.D.**
**and**
**NATIONAL MEDICAL INFORMATION SERVICES, INC.,**

the defendants herein, in a matter involving a health care benefit program, knowingly and willfully made, and caused to be made and used, materially false writings and documents knowing the same to contain materially false, fictitious, and fraudulent statements and entries in connection with the delivery of or payment for health care benefits, items, and services, in that Dr. Golding falsely represented on prescription forms that he had ordered the controlled substance prescription when he knew he had not.

| Count | Patient | Date of Prescription | Insurer |
|---|---|---|---|
| 4 | C.F. | 10/15/2010 | Medicaid |
| 5 | C.T. | 10/15/2010 | Medicaid |

12

## FORFEITURE ALLEGATIONS

The Grand Jury further finds by probable cause that:

1.  Pursuant to Title 18, United States Code, Section 982(a)(7), upon conviction of an offense in violation of Title 18, United States Code, Sections 1035 and 1347 as set forth in Counts 1 through 5, the defendants shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from gross proceeds traceable to the commission of the offense.

2.  Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to said offense.

3.  If any of the property described above, as a result of any act or omission of the defendant:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____

FOREPERSON

RICHARD G. CALLAHAN
United States Attorney

_____

DOROTHY L. McMURTRY, #37727
Assistant United States Attorney