UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:13 CR 522 JAR (SPM) |
| | ) | |
| DEVON NORTHON GOLDING,M.D. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

In accordance with the Memorandum filed herewith,

**IT IS HEREBY RECOMMENDED** that Defendant Devon North Golding, M.D.'s motion to strike certain allegations in the superseding indictment or, alternatively, to dismiss the superseding indictment as duplicitous (Doc. No. 47) be **DENIED.**

The parties are advised that they have fourteen (14) days in which to file written objections to this recommendation and determination. Failure to timely file objections may result in waiver of the right to appeal questions of fact. *Thompson v. Nix,* 897 F.2d 356, 357 (8th Cir. 1990).

Further,

**IT IS HEREBY ORDERED** that Defendant Devon North Golding, M.D.'s motion to compel *Brady* and *Giglio* materials (Doc. No. 48) is **DENIED IN PART, AND GRANTED IN PART.** Consistent with the Memorandum filed herewith, on or before **Friday, October 24, 2014**, the United States must produce the reports summarizing Marletta Payne's interviews. The United States may, if it chooses, redact those portions of the reports that do not constitute *Brady* or *Giglio* material.

Trial in this case has been set on **November 10, 2014** at **9:00 A.M.** before the Honorable John A. Ross.

                                          /s/Shirley Padmore Mensah
                                          SHIRLEY PADMORE MENSAH
                                          UNITED STATES MAGISTRATE JUDGE

Dated this 17th day of October, 2014.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:13 CR 522 JAR (SPM) |
| ) | |
| DEVON NORTHON GOLDING,M.D. ) | |
| ) | |
| ) | |
| Defendants. ) | |

# **MEMORANDUM**

This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C.§636(b). Defendant Devon Northon Golding, M.D. is charged with three counts of health care fraud (Counts 1-3) and two counts of false statements involving a health care benefit plan (Counts 4-5). The Defendant filed a motion to strike certain allegations in the superseding indictment or, alternatively, to dismiss the superseding indictment as duplicitous (Doc. No. 47). Defendant also filed a motion to compel *Brady and Giglio* materials (Doc. No. 48). The United States filed responses opposing the motions. (Doc. Nos. 53 & 57). On October 14, 2014, I held a hearing on Defendant's pretrial motions.

## A. Motion to Strike Surplusage or to Dismiss the Superseding Indictment as Duplicitous (Doc. No. 47).

Defendant moves to strike paragraphs 35-44 of the Superseding Indictment as surplusage. Defendant contends those paragraphs are akin to propensity evidence that would be inadmissible under Rule 404(b) and should be stricken because they are irrelevant, inflammatory and prejudicial. Defendant contends, in the alternative, that the Superseding Indictment should be dismissed as duplicitous because the paragraphs assert separate and distinct offenses. Defendant argues that allowing the paragraphs to remain in the indictment creates a risk that the jury could convict the Defendant without unanimous agreement with respect to a particular offense.

Rule 7(d) of the Federal Rules of Criminal Procedure allows the Court, on motion of the Defendant, to strike surplusage from the indictment. "A motion to strike surplusage from an indictment . . . should be granted only where it is clear that the allegations contained therein are not relevant to the charge made or contain inflammatory and prejudicial matter." *United States v. Michel-Galaviz*, 415 F.3d 946, 948 (8th Cir. 2005)(quoting *Dranow v. United States*, 307 F.2d 545, 558 (8th Cir. 1962)). To the extent the Government's admissible evidence adduced at trial parallels the factual allegations in the indictment, the allegations cannot be properly characterized as inflammatory or prejudicial. *See United States v. Figueroa*, 900 F.2d 1211, 1218 (8th Cir. 1990)(holding allegations were neither

irrelevant nor inflammatory and prejudicial because they closely paralleled the evidence adduced at trial). Here, the allegations Defendant seeks to strike are neither irrelevant nor inflammatory and prejudicial.

Paragraphs 35-44 of the Superseding Indictment allege that Defendant was investigated by the Missouri Bureau of Narcotics and Dangerous Drugs ("BNDD") in 1987 and 1993 (¶¶ 35-36), the Missouri State Board of Registration for the Healing Arts (the "Board") in 1998 (¶¶ 37-39), and the Missouri Board of Pharmacy ("Pharmacy Board") in 2008 (¶¶ 40-44). The allegations assert that Defendant entered into settlements with each of these regulatory agencies. The paragraphs related to the BNDD investigations and settlements assert that Defendant acknowledged that only a physician with a Missouri Controlled Substance Registration number may prescribe controlled substances. Those paragraphs also assert that Defendant was required to review materials pertaining to the proper distribution and dispensation of controlled substances, among other things.

The paragraphs related to the 1998 Board investigation and settlement assert that Defendant entered into a settlement agreement with the board in which Defendant stipulated that, among things, he permitted a physician assistant to examine, diagnose and treat patients when he was away even though the physician assistant was not authorized under Missouri law to provide such services.

Defendant also stipulated in the Settlement Agreement that he permitted the physician assistant to use his registration number and sign his name on prescriptions for controlled substances.

Finally, the paragraphs related to the Pharmacy Board investigation and settlement assert that Defendant knew that only a physician with a controlled substance registration number was authorized to prescribe controlled substances. The paragraphs related to the Pharmacy Board investigation also assert that in the settlement agreement Defendant admitted that between December 20, 2007 and March 27, 2008 two nurse practitioners who worked for him wrote and signed prescriptions for controlled substances and that DNG, an entity that was owned by Defendant at the time, filled the prescriptions signed by nurse practitioners and dispensed the medications. In connection with the settlement entered into with the Pharmacy Board, Defendant allegedly stipulated that controlled substance prescriptions signed by nurse practitioners instead of a licensed medical doctor are invalid.

Evidence related to the administrative actions described in the challenged paragraphs is relevant to the United States' claim that Defendant made false statements involving a health care benefit plan in violation of Title 18, United States Code, Section 1035(a). To establish a violation of Section 1035(a), the United States must prove that the defendant acted knowingly and willfully. "An act

4

is done knowingly if the defendant is aware of the act and does not act [or fails to act] through ignorance, mistake or accident." *United States v. Dockter,* 58 F.3d 1288 (8th Cir. 1995). In a criminal context, the term "wilfully" generally requires proof that the defendant knew that his conduct was unlawful, but does not require proof that he knew the specific statute that his conduct violated. *United States v. Jain,* 93 F.3d 436, 441 (8th Cir. 1996) (holding in Medicare kickback case that government must prove defendant knew his conduct was wrongful).

Evidence that on more than one prior occasion, Defendant entered into settlements with various regulating bodies in which Defendant acknowledged, among other things, being advised of the proper procedures for prescribing controlled substances is probative of whether in the instant offense Defendant acted knowingly or did not act as a result of ignorance or accident. *See* Fed. R. Evid. 401 (Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). In addition, evidence that Defendant was sanctioned in the prior administrative actions for failing to comply with laws and regulations governing controlled substance prescriptions is also probative of whether Defendant acted wilfully in this case. *See id.*

The undersigned acknowledges that the past conduct described in the challenged paragraphs is similar to the conduct alleged in the instant offense. As

such, the challenged allegations do, as Defendant contends, resemble improper propensity evidence. However, that fact alone is not a sufficient basis for striking the allegations particularly when, as set forth above, the challenged allegations are relevant to specific elements of the government's case and can be offered for reasons other than propensity. Defendant has offered no persuasive argument as to why any prejudicial effect that might arise from retaining the challenged allegations cannot be effectively mitigated by an appropriate limiting instruction. *See United States v. Hawthorne*, 235 F.3d 400, 403 (8th Cir. 2000) (holding that where relevant evidence is also prejudicial, a limiting instruction may be used to diminish the danger of unfair prejudice from the admission of challenged evidence).

Therefore, Defendant's motion to strike the surplusage or, in the alternative, to dismiss, should be denied.

**B. Motion to Compel *Brady* and *Giglio* Material (Doc. No. 48)**

Defendant seeks an order compelling the United States to produce 1) all reports and memoranda of interviews of a key government witness, Ms. Marletta Payne; 2) copies of all law enforcement agent notes related to the interviews of Ms. Payne; 3) to the extent the Government or any law enforcement officer has knowledge of any matter which is favorable to the Defendant or could be used to impeachment that has not been memorialized, to order the information to be

6

documented and a copy provided to the Defendant; and 4) timely production of any other *Brady* and *Giglio* material.

*Brady v. Maryland,* 373 U.S. 83 (1963), and its progeny require the Government to provide a defendant with any evidence in its possession which is favorable to the defendant and which is material to the guilt or innocence of the defendant or to punishment. *Brady,* 373 U.S. at 87. The Government's disclosure obligation is a continuing one that "encompasses both substantive exculpatory evidence and evidence that might be valuable in impeaching government witnesses." *United States v. Keys*, 721 F.3d 512, 520 (8th Cir. 2013). Disclosure of information that could be used to impeach a government witness is especially important where the witness's testimony is an important part of the government's case. *See Giglio v. United States,* 450 U.S. 150 (1972) (reversing conviction where government failed to disclose a promise of immunity to a witness on whose testimony government's case "almost entirely" rested upon).

The *Brady* line of cases do not constitute a discovery rule that broadly grants a right of pretrial discovery to a defendant. *See United States v. Bagley,* 473 U.S. 667, 675 n.7 (1985) (noting that "[a]n interpretation of *Brady* to create a broad, constitutionally required right of discovery would entirely alter the character and balance of our present system of criminal justice."). Rather, the *Brady* rule is a "self-executing constitutional rule that due process requires disclosure by the

prosecution of evidence favorable to the accused that is material to guilt or punishment." *United States v. Garrett,* 238 F.3d 293, 302 (5th Cir. 2000)(Fish, J., concurring).

Indeed, the Eighth Circuit has repeatedly recognized that *Brady* does not ***require*** pretrial disclosure of favorable, exculpatory and impeaching information. *United States v. Spencer,* 753 F.3d 746, 748 (8th Cir. 2014) (quoting *United States v. Almendares*, 397 F.3d 653, 664 (8th Cir. 2005)). Although pretrial disclosure is not required, under *Brady*, due process is satisfied only if the information is furnished before it is too late for the defendant to effectively use it at trial. *Almendares*, 397 F.3d at 664. As such, the Eighth Circuit has expressed its disapproval of "any government agent avoiding a forthright disclosure of relevant information" particularly where the information withheld is of an exculpatory nature. *Id.* The key is whether, under the particular facts and circumstances presented, pretrial disclosure of *Brady* material is necessary in order for a defendant to use *Brady* material effectively at trial.

It is undisputed in this case that Defendant's former nurse practitioner, Marletta Payne, is a key government witness who has been interviewed on multiple occasions by federal or other law enforcement agents. From the beginning of the case, the Government informed the Defendant that Ms. Payne would testify that she unlawfully provided medical services outside of the scope of her authority and

prescribed controlled substances to the Defendant's patients. On September 22, 2014, the Government verbally disclosed that Ms. Payne had lied when she first spoke to federal agents and later admitted that she had lied to federal agents, but she has not been charged with any crime. In a subsequent email, the Government confirmed its verbal disclosures and also stated that no promises had been made to Payne. *See* Doc. No. 53-1.

The e-mail indicates that Payne was interviewed "several times" by federal agents and that in the "initial interview" Ms. Payne lied to the agents and denied any "illegal acts." The email also indicates that "[i]n subsequent interviews, Ms. Payne admitted that she had lied to the agents." However, the e-mail provides no details about what specific illegal acts Ms. Payne initially denied and what specific illegal acts Ms. Payne later confessed. Nor has the Government suggested that such details have ever been provided to the Defendant or his counsel.

At the hearing, the prosecutor confirmed that Ms. Payne's statements have been summarized by the investigating agents and reduced to one or more formal written reports. The prosecutor indicated that the Government intended to produce the formal reports summarizing Ms. Payne's statements to Defendant on November 7, 2014, which is the Friday before trial is set to begin. The Government does not contest that the statements contained in the reports are subject to disclosure under *Brady* and *Giglio*. Instead, the Government argues that the e-mail

summarizing Ms. Payne's interactions with the agents discharged the Government's disclosure obligations under *Brady*.

As defense counsel pointed out at the hearing, the lack of details in the e-mail disclosure by the Government hamstrings any ability Defendant has to effectively use the information to aid in his defense at trial. For example, Defendant knows that Ms. Payne initially denied engaging in illegal activity but he does not know what specific illegal activity she denied or the extent to which such denial may or may not prove exculpatory. He also now knows from the hearing that, over the course of several interviews, Ms. Payne subsequently admitted that she had initially lied to the agents. However, Defendant does not know exactly what Ms. Payne claims to have lied about. In addition, Defendant has demonstrated that he has no other means of obtaining the details of Ms. Payne's statements to federal agents because Ms. Payne will not talk to him or his counsel.

The Government has offered no compelling reason why the summary of Ms. Payne's statements should not be produced at this time. At the hearing, the prosecutor confirmed that the summaries of Ms. Payne's statements did not constitute material covered by the Jencks Act as Ms. Payne has never reviewed and affirmed the summaries. The prosecutor also indicated that the Government intends to produce the summaries to defense counsel on November 7th, the Friday before trial is set to begin. The prosecutor did not suggest that the Government's case or

the witness would be prejudiced or harmed in any way by the immediate disclosure of the summaries. The Government has offered no other explanation for why summaries it has already agreed to produce three days before trial should be withheld for three weeks before trial.

The undersigned recognizes that, at this juncture, the materiality of the details of Ms. Payne's statements may be an open question. However, as the Supreme Court has held, a prosecutor "anxious about tacking too close to the wind," will and "should" resolve doubtful questions in favor of disclosure. *Kyles v. Whitney*, 514 U.S. 419, 440 (quoting *United States v. Agurs,* 427 U.S. 97, 107 (1976)). Here, the record made in open court by defense counsel regarding the reasons for an immediate disclosure of the written summaries tips the scales in favor of immediate disclosure.

Therefore, Defendant's motion to compel *Brady* and *Giglio* material should be granted, but only to the extent of the written reports summarizing Ms. Payne's interviews with federal agents. The Government may, if it chooses, redact any portions of the report that do not reflect statements made by Ms. Payne. In all other respects, Defendant's motion to compel should be denied.

/s/Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 17th day of October, 2014.